UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
ALBERTO NIETO,                          :  17 Civ. 2037 (JCF)
                                        :
                Plaintiff,              :       MEMORANDUM
                                        :       AND   ORDER
     - against -                        :
                                        :
VILLAGE RED RESTAURANT CORP. d/b/a      :
WAVERLY RESTAURANT, 135 WAVERLY         :
REALTY LLC, CHRISTINE SERAFIS, and      :
NICHOLAS SERAFIS,                       :
                                        :
                Defendants.             :
- - - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/10/17

    Alberto Nieto brings this action against Village Red Restaurant Corp. ("Village Red"), 135 Waverly Realty LLC ("Waverly Realty"), Christine Serafis, and Nicholas Serafis pursuant to the Fair Labor Standards Act (the "FLSA") and New York Labor Law § 190 et seq. (the "NYLL"). Mr. Nieto alleges that while working as a dishwasher, deliveryman, and "grillman" at the defendants' Waverly Restaurant (the "Waverly"), he worked over forty hours per week but did not receive overtime wages. He further asserts that the defendants did not provide accurate wage statements and annual wage notices.

    In Garcia v. Village Red Restaurant Corp. -- a related case featuring the same restaurant and similar defendants[1] -- I granted

---

[1] The defendants in Garcia are the same with the exception of Waverly Realty.

1

partial summary judgment, finding that Ms. Serafis – the sole shareholder and president of Village Red -- was not the <u>Garcia</u> plaintiffs' employer and not liable under the FLSA or the NYLL because she exercised no control over the enterprise. No. 15 Civ. 6292, 2017 WL 1906861, at *1, *4 (S.D.N.Y. May 8, 2017). In this action, Ms. Serafis and Waverly Realty have moved to dismiss, arguing that <u>Garcia</u> precludes the plaintiff's claims against Ms. Serafis and that the plaintiff has not alleged facts sufficient to demonstrate that Ms. Serafis and Waverly Realty[2] were Mr. Nieto's employers. For the reasons that follow, the defendants' motion is granted in part and denied in part.

<u>Res Judicata</u>

Ms. Serafis argues that the doctrine of <u>res judicata</u> bars the plaintiff from bringing a claim against her because <u>Garcia</u> held that she was not the <u>Garcia</u> plaintiffs' employer. (Memorandum of Law in Support of Motion to Dismiss by Defendants 135 Waverly Realty LLC and Christine Serafis ("Def. Memo.") at 5-7). "<u>[R]es judicata</u>, or claim preclusion, applies in later litigation if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of

---

[2] Ms. Serafis "owns" Waverly Realty, which in turn owns the restaurant's building and adjoined residences. (Complaint, ¶¶ 12, 21).

action." Hecht v. United Collection Bureau, Inc., 691 F.3d 218, 221-22 (2d Cir. 2012) (quoting In re Adelphia Recovery Trust, 634 F.3d 678, 694 (2d Cir. 2011)).

The plaintiff argues that my previous determination in Garcia was not "a final judgment on the merits" because the Garcia summary judgment decision only partially resolved the case. (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl. Memo") at 4-6). A partial summary judgment may have preclusive effect if a final judgment is entered pursuant to Rule 54(b). Bell v. Taylor, 827 F.3d 699, 707-08 (7th Cir. 2016); 18 James Wm. Moore et al., Moore's Federal Practice ¶ 131.30(2)(b) & nn.44, 47, & 47.1 (3d ed. 2017); Restatement (Second) of Judgments § 13 cmt. e (Am. Law Inst. 1982); see also Fed. R. Civ. P. 54(b) ("When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

3

However, if final judgment has not been entered, then a partial summary judgment generally does not have preclusive effects. See Warner Bros. Inc. v. American Broadcasting Companies, Inc., 720 F.2d 231, 245 n.11 (2d Cir. 1983) ("The 'subject to revision' language of Rule 54(b) underscores that a grant of partial summary judgment on one of several claims does not have res judicata effect prior to the entry of an appealable judgment."); Acha v. Beame, 570 F.2d 57, 62-63 (2d Cir. 1978) ("It follows that where, as in the instant case, a partial summary judgment is rendered with respect to only part of the relief sought by the appellants, and where consideration of further relief is specifically reserved, judgment is neither 'final' nor on an entire 'claim. . . .'  Where a judgment is not 'final,' within the terms of 28 U.S.C. § 1291, and hence not certifiable under Rule 54(b), it has no res judicata effect.").  Because my decision only partially resolved the claims in Garcia and was not entered as a final judgment, res judicata does not apply.

Even if the judgment were final, the parties are not sufficiently aligned to enforce the Garcia decision against Mr. Nieto.  "As a general rule, 'a litigant is not bound by a judgment to which [he] was not a party' because a nonparty 'generally has not had a "full and fair opportunity to litigate" the claims and issues settled in that suit.'"  Yan Won Liao v. Holder, 691 F.

4

Supp. 2d 344, 352-53 (E.D.N.Y. 2010) (quoting Taylor v. Sturgell, 553 U.S. 880, 892, 898 (2008)). There are six recognized exceptions to the rule against nonparty preclusion:

> (1) "a person who agrees to be bound by the determination of issues in an action between others [will be] bound in accordance with the terms of his agreement;"
>
> (2) there is a "pre-existing substantive legal relationship [] between the person to be bound and a party to the judgment;"
>
> (3) a party was "adequately represented by someone with the same interests who was a party to the suit;"
>
> (4) a party "assumed control over the litigation in which that judgment was rendered;"
>
> (5) a party who is bound by a judgment attempts to "avoid its preclusive force by relitigating through a proxy;" and
>
> (6) a "special statutory scheme may expressly foreclose successive litigation by nonlitigants . . . if the scheme is otherwise consistent with due process."

Id. at 353 (alterations in original) (quoting Taylor, 553 U.S. at 894-95). The defendants have not suggested that any of these exceptions apply. The only apparent relationship between Mr. Nieto and the Garcia plaintiffs is that the same law firm represents them and that the plaintiffs in both cases worked at the Waverly. That relationship is insufficient to establish one of the exceptions to nonparty preclusion.[3] See Taylor, 553 U.S. at 894

---

[3] Collateral estoppel, often referred to as issue preclusion, would not apply for the same reasons. See Taylor, 553 U.S. at 892.

("[A] nonparty may be bound by a judgment because she was 'adequately represented by someone with the same interests who [wa]s a party' to the suit. Representative suits with preclusive effect on nonparties include properly conducted class actions, and suits brought by trustees, guardians, and other fiduciaries." (second alteration in original) (citations omitted) (quoting Richards v. Jefferson County, 517 U.S. 793, 798 (1996))); South Central Bell Telephone Co. v. Alabama, 526 U.S. 160, 168 (1999) (holding that plaintiffs' awareness of earlier similar litigation and retaining lawyer from that litigation did not create "special representational relationship"). Therefore, res judicata does not apply.

Employment Relationship

The defendants argue that the plaintiff has not pled facts sufficient to establish that Waverly Realty and Ms. Serafis are Mr. Nieto's employers.

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court's charge in ruling on a 12(b)(6) motion to dismiss "is merely to assess the legal feasibility of the

complaint, not to assay the weight of the evidence which might be offered in support thereof." GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd., 580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008) (quoting Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004)).  The court must construe the complaint in the light most favorable to the plaintiff, "taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).

The statutory definition of "employer" under the FLSA sweeps broadly. Barfield v. New York City Health & Hospitals Corp., 537 F.3d 132, 140 (2d Cir. 2008). An employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). An employee is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). To "employ" means "to suffer or permit to work." 29 U.S.C. § 203(g).

"[T]he determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in 'economic reality rather than technical concepts,' . . . determined by reference not to 'isolated factors but rather upon the circumstances of the whole activity.'" Saleem v. Corporate Transportation Group, Ltd., 854 F.3d 131, 140 (2d Cir. 2017)

(second alteration in original) (quoting Barfield, 537 F.3d at 141).  The Second Circuit has recognized a "'nonexclusive and overlapping set of factors' to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA."  Irizarry v. Catsimatidis, 722 F.3d 99, 105 (2d Cir. 2013) (quoting Barfield, 537 F.3d at 143).  These include: (1) the power to hire and fire, (2) the ability to supervise and control employee schedules or conditions of employment, (3) the authority to decide rates and methods of payment, and (4) the maintenance of employment records.  Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984).  These factors are sufficient but not necessary to establish employment status.  Barfield, 537 F.3d at 142-43.

"While a putative employer need not directly control employees to be liable under the FLSA, some 'individual involvement' in a company is generally required: an individual defendant must at least exercise 'operational control' over the employee's employment."  Garcia, 2017 WL 1906861, at *4 (quoting Irizarry, 722 F.3d at 106, 109).  "It is appropriate . . . to require some degree of individual involvement in a company in a manner that affects employment-related factors such as workplace conditions and operations, personnel, or compensation -- even if this appears to establish a higher threshold for individual

8

liability than for corporate 'employer' status." Irizarry, 722 F.3d at 109.

 A. Waverly Realty

Mr. Nieto's allegations as to Waverly Realty are conclusory. For instance, he alleges that Village Red and Waverly Realty "were a single and joint employer of Plaintiff with a high degree of interrelated and unified operations, common control, common business purpose, interrelated business goals, and common ownership and management." (Complaint, ¶ 16). The only allegation with any substance that he makes is that "on days when Nieto worked for Waverly Restaurant, he was required to perform services for 135 Waverly Realty LLC, including sweeping and cleaning the building's hallways and cleaning trash receptacles." (Complaint, ¶ 20). However, this allegation is also nonspecific; it does not indicate who "required" him to clean the building, and it does not indicate whether he was cleaning an area rented and controlled by Village Red or controlled only by Waverly Realty. There are no allegations that Waverly Realty had the power to hire or fire, set wages, maintain employment records, control his schedule, or set his conditions of employment. Therefore, the plaintiff has not alleged sufficient facts to show that Waverly Realty is a joint employer. See Iqbal, 556 U.S. at 678; Chen v. Domino's Pizza,

Inc., Civ. A. No. 09-107, 2009 WL 3379946, at *4-5 (D.N.J. Oct. 16, 2009).

The plaintiff argues in the alternative that Waverly Realty can be treated as an employer under the "single integrated enterprise" test. (Pl. Memo. at 7-8). That test is used to assess "whether a group of distinct but closely affiliated entities should be treated as a single employer for FLSA purposes." Juarez v. 449 Restaurant, Inc., 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014); see Arculeo v. On-Site Sales & Marketing, LLC, 425 F.3d 193, 198 (2d Cir. 2005) ("A 'single employer' situation exists 'where two nominally separate entities are actually part of a single integrated enterprise . . . .'" (alteration in original) (quoting Clinton's Ditch Cooperative Co. v. NLRB, 778 F.2d 132, 137 (2d Cir. 1985))). "In such circumstances, of which examples may be parent and wholly-owned subsidiary corporations, or separate corporations under common ownership and management, the nominally distinct entities can be deemed to constitute a single enterprise." Arculeo, 425 F.3d at 198. "Under this standard, courts consider (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." Juarez, 29 F. Supp. 3d at 367.

The plaintiff's allegations that Waverly Realty and Village Red have "a high degree of interrelated and unified operations,

common control, common business purpose, interrelated business goals, and common ownership and management" (Complaint, ¶ 16) are too vague and conclusory to assess the interrelatedness of the entities. Mr. Nieto further alleges that Mr. Serafis and Mr. Captan are managers of both entities and that Ms. Serafis owns and is the president of both Village Red and Waverly Realty. (Complaint, ¶¶ 18, 21). These allegations, while showing some common management and ownership, demonstrate nothing about how the two companies are integrated or operated as one entity. The plaintiff's allegations simply do not provide enough detail to infer that there was a single, integrated enterprise. Therefore, the plaintiff does not benefit from this theory.

    B.   Ms. Serafis

The plaintiff alleges the following facts regarding Ms. Serafis:

  (1)  Defendant Christine Serafis is President of Village Red Restaurant Corp. and the sole shareholder and owner of 135 Waverly Realty LLC, and is sued individually in her capacity as an owner, officer, and/or agent of Village Red Restaurant Corp. and 135 Waverly Realty LLC.

  (2)  Nicholas Serafis gave ownership of Village Red Restaurant Corp. to Christine Serafis, his daughter, for estate tax purposes.

  (3)  Although Christine Serafis receives an annual salary from Village Red Restaurant Corp., she does not hold annual meetings, keep minutes, or observe any other corporate formalities as sole shareholder of Village Red Restaurant Corp.

 (4) Christine Serafis exercises sufficient control over the Waverly Defendants' operations to be considered Nieto's employer under the FLSA and NYLL.

 (5) Christine Serafis had the authority to hire and fire employees of the Waverly Defendants and to set wages.

 (6) Christine Serafis established and exercised authority regarding the managerial and administrative practices of the Waverly Defendants.

 (7) Christine Serafis hired Nicholas Serafis to manage Waverly Restaurant.

 (8) Christine Serafis's signature appears on paychecks issued to Nieto from Village Red Restaurant Corp.

 (9) [T]hroughout Nieto's employment, he [asked for and received] at least six letters of employment [and] income verification [from the Waverly]. Each letter is on Waverly Restaurant letterhead with Christine Serafis's signature and title as President. Christine Serafis is also the contact person in said letters if the recipient required further information.

(Complaint, ¶¶ 21-29). These allegations, though thin, are more detailed than the allegations against Waverly Realty and are sufficient to state claim.[4]

---

[4] For purposes of adjudicating the motion to dismiss Mr. Nieto's claims against Ms. Serafis, I must, of course, accept the allegations of the complaint as true and disregard the evidence or lack of evidence regarding her status submitted in connection with the motion for partial summary judgment in Garcia. This does not, however, rule out a later award of sanctions under Rule 11 if counsel did not conduct a reasonable investigation of the facts before asserting the claims against Ms. Serafis in this case.

Conclusion

For the reasons stated above, Ms. Serafis' and Waverly Realty's motion to dismiss (Docket no. 28) is granted in part and denied in part. The Clerk of Court shall terminate Waverly Realty from this action.

SO ORDERED.

*(signature)*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       October 6, 2017

Copies transmitted this date to:

Louis Pechman, Esq.
Vivianna A. Morales, Esq.
Lillian M. Marquez, Esq.
Pechman Law Group PLLC
488 Madison Ave.
New York, NY 10022

Arthur H. Forman, Esq.
98-20 Metropolitan Ave.
Forest Hills, NY 11375

John A. Mitchell, Esq.
Mitchell & Incantalupo
98-20 Metropolitan Avenue
Forest Hills, NY 11375